Approved: _____
MATHEW S. ANDREWS
Assistant United States Attorney

Before: THE HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>JUAN COLON, a/k/a "John,"<br><br>Defendant. | **COMPLAINT**<br><br>Violation of 21 U.S.C. § 846<br><br>COUNTY OF OFFENSE:<br>ORANGE<br><br>19m2496 |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JULIE IRENE, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and charges as follows:

## COUNT ONE

1. From at least in or about September 2018, up to and including March 13, 2019, in the Southern District of New York, JUAN COLON, a/k/a "John," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that JUAN COLON, a/k/a "John," the defendant, would and did distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substances that JUAN COLON, a/k/a "John," the defendant, conspired to distribute and possess with intent to distribute were 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(b)(1)(A), and 280 grams and more of mixtures or substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846).

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with other law-enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts

that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Controlled Buys

5. Based on my conversations with an officer of the Middletown Police Department ("Officer-1"), who spoke with other members of law enforcement, I know that on or about February 14, 2019, a confidential informant ("CI-1")[1] advised Officer-1 that a Hispanic male ("CC-1"), who has been the target of numerous narcotic related investigations in the past, was in fact selling heroin. At the direction of Officer-1, CI-1 contacted CC-1 by phone the same day in order to purchase heroin. CC-1 agreed to meet with CI-1 to make the sale and specified a location where CI-1 could pick him up. Officer-1 then provided CI-1 with pre-recorded United States Currency to facilitate the transaction.

6. Based on my conversations with Officer-1, who debriefed an undercover law enforcement officer (the "UC") and CI-1, I know, among other things, the following:

   a. The same day, the UC drove CI-1 to the location specified by CC-1.[2] CC-1 then entered the UC's vehicle.

   b. Upon entering the vehicle, CC-1 stated that he would have to go to "John's" apartment to purchase the heroin. CC-1 stated that the apartment was located at a specific address on Linden Avenue (the "Target Building"). The UC drove CC-1 and CI-1 to the Target Building and parked outside of the Target Building's front entrance. CC-1 then exited the vehicle and entered the Target Building's front door.

7. Based on my conversations with another officer of the Middletown Police Department, ("Officer-2"), I know, among other things, the following:

   a. The Target Building has a front entrance and several back entrances. The front entrance is a common entrance through which any of the Target Building's apartments may be accessed. The back entrances, however, are specific to each of the Target Building's apartments. Each back entrance is accessible via a series of staircases located on the rear of the Target Building.

   b. After entering the front door of the Target Building, CC-1 exited shortly after from the back exit to a particular apartment located on the third floor of the Target Building

---

[1] Since CI-1's arrest, CI-1 has been cooperating with law enforcement officials—including as detailed herein—in an attempt to obtain the benefits of a cooperation agreement. CI-1 had also been paid by law enforcement for his cooperation. CI-1 has provided law enforcement officials with information that has been corroborated independently in the past. CI-1 has a lengthy criminal history, including convictions for, among other things, narcotics offenses and larceny offenses.

[2] Prior to the UC driving CI-1 to the specified location, Officer-1 searched CI-1 to ensure that CI-1 had no drugs.

(the "Target Apartment"). CC-1 descended the stairs located on the rear of the Target Building and reentered the vehicle containing the UC and CI-1.

8. Based on my conversations with Officer-1, who debriefed the UC and CI-1, I know, among other things, the following:

    a. After CC-1 entered the vehicle, CC-1 stated that he had met with "John" to retrieve the heroin. CI-1 then handed CC-1 the pre-recorded United States currency and CC-1 handed CI-1 white glassine envelopes containing a tan powdery substance.

    b. CI-1 subsequently gave the glassine envelopes to Officer-1. The UC then conducted a field test on one of the glassine envelopes, which tested positive for heroin.

9. Based on my conversations with Officer-2, who debriefed a second confidential informant ("CI-2"),[3] I know, among other things, the following:

    a. On or about December 13, 2018, CI-2 advised Officer-2 that the occupant of the Target Apartment was JUAN COLON, a/k/a, "John," the defendant. CI-2 further advised Officer-2 that the COLON had been selling heroin and crack-cocaine from the Target Apartment.

    b. On or about February 20, 2019, Officer-2 directed CI-2 to contact COLON via phone in order to purchase controlled substances. COLON directed CI-2 to meet at his residence and provided the address of the Target Apartment. Officer-2 provided CI-2 with pre-recorded United States Currency to facilitate the transaction.

    c. Shortly after the conversation, CI-2 arrived at the Target Apartment and met with COLON.[4] Officer-2 then observed CI-2 enter the Target Apartment through the Target Apartment's entrance in the rear of the Target Building.

    d. Upon entering the Target Apartment, CI-2 spoke with COLON regarding the sale and purchase of narcotics. CI-2 handed COLON the pre-recorded buy money and COLON handed CI-2 numerous plastic ziploc bags containing an off white chunky substance.

    e. CI-2 then exited the Target Apartment and gave the glassine envelopes to Officer-1. Another officer of the Middletown Police Department then conducted a field test on one of the Ziploc bags, which tested positive for cocaine.

    f. On or about February 23, 2019, Officer-2 again directed CI-2 to contact COLON via phone in order to purchase controlled substances. COLON directed CI-2 to meet at

---

[3] Since CI-2's arrest, CI-2 has been cooperating with law enforcement officials—including as detailed herein—in an attempt to obtain the benefits of a cooperation agreement. CI-2 had also been paid by law enforcement for his cooperation. CI-2 has provided law enforcement officials with information that has been corroborated independently in the past. CI-2 has a lengthy criminal history, including convictions for, among other things, narcotics offenses and larceny offenses.

[4] Officer-2 searched CI-2 to ensure that CI-2 had no drugs prior to his arrival.

his residence and provided the address of the Target Apartment. Officer-2 provided CI-2 with pre-recorded United States Currency to facilitate the transaction.

g. Shortly after the conversation, CI-2 arrived at the Target Apartment and met with COLON.[5] Officer-2 then observed CI-2 enter the Target Apartment through the Target Apartment's entrance in the rear of the Target Building.

h. Upon entering the Target Apartment, CI-2 again spoke with COLON regarding the sale and purchase of narcotics. CI-2 handed COLON the pre-recorded buy money and COLON handed CI-2 numerous plastic Ziploc bags containing an off white chunky substance.

i. CI-2 then exited the Target Apartment and gave the glassine envelopes to Officer-1, who conducted a field test on one of the Ziploc bags. The substance inside tested positive for crack-cocaine.

### The Search

10. Based on my conversations with Officer-1, I know, among other things, the following:

a. During the first week of March 2019, Officer-1 met with CI-1. CI-1 stated that earlier that week, CI-1 met with JUAN COLON, a/k/a "John," the defendant, to purchase heroin and crack from COLON. During the meeting, COLON stated, in sum and substance, that he sometimes keeps his drugs in the "Office" located in the basement of the Target Building.

b. Several days later, on or about March 12, 2019, CI-1 communicated to Officer-1 that COLON had just purchased additional quantities of heroin and crack cocaine.

11. The same day, on or about March 12, 2019, a City of Middletown Court Judge issued a search warrant, authorizing and directing law enforcement officers to search the Target Apartment.

12. Based on my conversations with an officer of the New York State Police Department ("Officer-3"), who participated in the search, I know, among other things, the following:

a. On or about March 13, 2019, in the morning, after the City of Middletown Court Judge issued the search warrant, Officer-3 and other law enforcement officers entered the Target Apartment and took into custody JUAN COLON, a/k/a "John," the defendant, and a female residing in the apartment.

b. Law enforcement subsequently searched the Target Apartment, and Officer-3 located approximately 200 grams of marijuana in a cabinet located in the kitchen of the

---

[5] Officer-2 searched CI-2 to ensure that CI-2 had no drugs prior to his arrival.

4

Target Apartment. Law enforcement subsequently placed COLON under arrest and read him his *Miranda* rights.

    c.  Law enforcement also located several sets of keys during the search of the Target Apartment. Law enforcement subsequently took the keys to a door labeled, "Office," in the basement of the Target Building. Law enforcement tried the keys on the locked door of the Office, and one of the keys successfully opened the lock.

  13.  Based on my conversations with an officer of the Middletown Police Department ("Officer-4"), I know, among other things, the following:

    a.  Officer-4 contacted the owner of the Target Building (the "Owner") immediately after law enforcement successfully unlocked the door to the Office located in the basement of the Target Building. The Owner stated, in sum and substance, that JUAN COLON, a/k/a "John," the defendant, was not authorized to use the Office. Officer-4 asked the Owner to enter the Office, and the Owner gave his verbal and written consent.

    b.  Law enforcement subsequently searched the Office and seized, among other things, 400.6 grams of 3,4-Methylenedioxymethamphetamine ("MDMA" or "ecstasy"), 101.7 grams of heroin, 125.4 grams of crack cocaine, and approximately 200 grams of marijuana.

### The Post-Arrest Statement

  14.  Based on my conversations with Officer-1, I know that Officer-1 read JUAN COLON, a/k/a "John," the defendant, his *Miranda* rights upon his arrest at the Target Apartment.

  15.  Based on my conversations with Officer-3, I know that thereafter, law enforcement subsequently transported JUAN COLON, a/k/a "John," the defendant, to the Middletown Police Department. Officer-3 then asked COLON whether he had been read his *Miranda* rights and COLON answered yes. COLON then waived his *Miranda* rights and voluntarily made statements to Officer-3. The interview was video-taped. I was present for part of the interview, and have reviewed the video-tape. COLON stated, in sum and substance, that he had sold heroin, crack cocaine, and ecstasy pills out of the Target Apartment. COLON had been selling narcotics from the Target Apartment since approximately September 2018. COLON received approximately 200 grams of heroin and 200 grams of crack cocaine every 7-14 days. COLON bought his heroin, crack cocaine, and ecstasy pills from a single supplier ("CC-2"), who often provided the drugs to COLON on consignment. COLON further admitted the drugs located in the "Office" in the basement of the Target Building were his.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JUAN COLON, a/k/a "John," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
SPECIAL AGENT JULIE IRENE
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
13th day of March, 2019

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK